Madam Clerk, please call the next case. 114. 114. Counsel, you may proceed. Thank you, Your Honor. My name is Julie Garrison. I'm here on behalf of S&C Electric, the appellant in this case. And I'm here facing that high hurdle, the manifest weight of the evidence. I don't know that in 30 years of practicing in this area of law that I completely grasped this concept, but that's what we're here today on. It did, when I was reading over the briefs and looking over some of the testimony last night, I think this case, what it comes down to is whether the claimant who testified in September 2012, and maybe believably convincing, but that testimony is contradicted and inconsistent with the contemporaneous documented evidence, both medical records and business records, as well as witness testimony that's consistent with that documented evidence. Whether that testimony can be found credible and carry more or the most weight supporting this award. Let me just interject this. Sure. Is the testimony of the claimant in Congo so bizarre and so delusional that the commission couldn't believe it in the face of conflicting medical records? I mean, that's sort of the candid question to frame it specifically, isn't it? Well, I don't know that it's, I would... Is it inherently unbelievable? I don't know that I would, you know, classify it as bizarre or so unbelievable, but what I would state is, you know, he's coming to the commission claiming a very specific incident occurring at work on February 11, 2011, while he's operating a hand jack. And when you look at, well, what's in this record, and it's a big record, there's a lot of evidence in this record, what supports that? There's one isolated medical history that he gives about six weeks later to, I believe, the fifth medical provider that he sees. So in the interim, he's at the employee health services. He's at a clinic. He's seen two doctors. He's being questioned by, you know, specifically questioned by his supervisor, by his team leader, by a nurse in the employee health services. And at no time does he state, well, this happened on February 4, 2011, when I was operating this hand jack. And, you know, he testifies very, with some details about, you know, he felt a pop in his back, and, you know, it was immediate. As far as, I'm sorry, yes? Bookmark where you're at here, but you were talking about the record, and it leads me to ask a question here. The commission reached its decision, and the employer petitioned the circuit court for review, right? I'm sorry, I didn't understand the last part. The commission entered its decision. Employer petitioned the circuit court for review of the commission decision, right? That's correct. What was the issue requested of the circuit court to resolve? The issue was whether the decision of the commission, it was a manifest weight issue. Manifest weight of the evidence. Absolutely. When you talk about the record, the circuit court reached its decision. Without the record? Without the record. Without the record. How do you do that? Pardon? How can you do that? Well, I question that myself. Now, was there an acknowledgment by the circuit court it didn't have the record? How do we know this? Well, we know this because when we filed our notice of appeal of the circuit court's order to this court, and we went to the clerk of the circuit court in Cook County, they said, we don't have the record. And then they look back in their file, and they see that the commission never filed the record. And so the same judge who entered the decision confirming the commission's decision on March 13th of 2014 enters an order on July 15th of 2014 ordering that the record be prepared and filed with the clerk. It was the same judge. I was directed by the clerk of the court who handles the appeals to go back to that judge and have him enter that order. All right, so there's no doubt in your mind he didn't have the record when he issued the decision, correct? No, there's no question of that. All right, okay. So what should we do about that? So what do we do about that? If anything. Well, I... You want to be remanded back, I take it? I mean, you didn't raise it as an issue, but... No, I didn't raise it as an issue. I guess in my position... Why not? This court is... Well, I did reference it in my brief. I guess my position was that I felt that the court could address the manifest weight issue. Based on what? I mean, that this court could. You now have the record. The record was subsequently prepared and filed by the commission. And then it was filed with the circuit court, and then it was filed here, brought here. Well, you can see the problem. Do we want to put the stamp of approval on the circuit court issuing a ruling about the record and say that's okay, no harm, no foul? It is true, however, that we don't review the circuit court's decision. We review the commission's decision. Right. So I guess that was really, I guess, my ultimate thinking was, well, if we could go back to... So the action was form over substance? Pardon? I mean, substance over form? Does that mean anything? Hmm. Well, that's... I mean, there is a procedure, isn't it? Yes, there is a procedure. Outlined in the act that's to be followed? Right. Okay. Yes. Can I ask a question about the overtime? Yes, sure. One of your issues is... Yes. The employee's voluntary overtime should be excluded from his average weekly wage. And I'm confused about that because the arbitrator specifically says he's not including any overtime. And, I mean, both of you argue this overtime issue, that overtime was included, but the arbitrator clearly says, I'm quoting, in calculating the average weekly wage, the arbitrator finds that petitioner failed to prove that overtime should be included in the calculation. Close quote. And then goes on to say, I'm only calculating 40 hours a week. So I'm confused about what the issue is there. You're correct. It's more of a calculation because there were two documents. One of them was the Respondent's Exhibit No. 2 in the record. And it specifically indicated in that evidence that the petitioner's earnings, he'd only worked a 25-week period, but his earnings less overtime totaled $12,000 and some dollars. And when you divide that by the 25 weeks that he worked, you get an average weekly wage of $482.24. But the arbitrator's decision, even though I agree, he, or excuse me, she, did specifically find that the petitioner had failed to prove that they were mandatory and should be included, she calculated based on earnings of about $14,000 and some. So she got a higher average weekly wage. So it's really a calculation issue based on the evidence in this record. Well, but still, following up on what Justice Stewart asked, in your brief, and it's argued this way, but you have expressed as your second issue, as a matter of law and fact, the employee's voluntary overtime earnings should be excluded from his average weekly wage. And it's very apparent, based on what Justice Stewart read here, that the arbitrator did not include overtime in her computation. I think perhaps I was probably getting ahead of myself in the argument in the brief in the sense that the overtime was, we were saying that there was a miscalculation, that there was an error that we wanted the court to address, and anticipating that the argument would be from the claimant, which had been the argument at the commission, let alone then at the circuit court level, that they should have been included. So that's why I was, I guess, kind of getting ahead of myself and arguing that they should be excluded. You know, I'm sorry if I made it. I mean, you say the employer's agents testified that it wasn't mandatory, et cetera, et cetera, et cetera. And that's exactly what the arbitrator found. Right. Based on their testimony. You won that issue. You won that issue. Just didn't get the math quite right, I guess. Let me ask you a question, then going back to your original point. And again, it's a high hurdle with the credibility. But this case fairly doesn't stand or fall just on the testimony of the claimant, doesn't it? And I realize this Congo is somebody who also questioned his credibility. But he does support the claimant to the extent that although he also can't remember the specific date, he describes the accident to the arbitrator, correct? Says he's working and he sees he grabs his bag, right? Exactly. The arbitrator states in her findings that Mr. Congo testified he saw the petitioner grab his bag. And, but he, he doesn't state, he doesn't state that he knew when this occurred, much less any particular date. He had a different time. He stated that there was no conversation with the claimant at that time, which is what the petitioner had testified to. He, Mr. Congo testified he didn't know if he heard his bag at that time. He didn't know, you know, he, the claimant never told him, oh, that, you know, he felt a pop in his bag. You're pointing out legitimate things that I would argue to a jury. There's inconsistencies. Sure. And yet the arbitrator and the commission knew this when they ruled, correct? Yes, they did. Credibility is very difficult to challenge, as you know, under the case law. Yes. Unless the testimony is inherently improbable. If he says he was swinging from, you know, a rope 80 feet in a year and the claimant says he was on the ground. So, you know, that's difficult. I would concede that it's a difficult, it's a difficult standard. It's a high, it's a high burden. I guess my analysis would be, you know, it's a manifest weight, it's a balancing on one side. You know, we have this testimony about a very specific incident. And on the other side, we have a lot of evidence that negates that, that contradicts that, that's inconsistent. So at the end of the day, what does that mean in terms of a manifest weight standard? And, you know, without going in, I mean, I think the briefs are very, very thorough on both sides. Okay. But, you know, specifically, you know, I quoted quite a bit of testimony in my reply brief. But, you know, it's our position that it could be reversed on a manifest weight standard. All right. Thank you. Thank you, counsel. Counsel, you may respond. It should be fairly brief based on. I would think. You don't need to tell us the witness is a credible because that's what the commission found. Yeah. And just like you said, this is a credible. Is there evidence in the record that shows that there's something to be supported? Of course. No problems beforehand. There is the physical. What is employment? When he begins his employment a week before this accident happens, he's performing at a high level. And then this accident happens. It's coffee. Congo does confirm that he saw this happen. And he does say, if you look on page two, let's see. Like 26 of the reports that he does say that he does have this conversation with Mr. Cortez, where he said that, yes, he did feel a pop in his back after he grabbed his back. There's plenty of evidence to confirm that this accident happens and to confirm the commission's findings. As for the the record issue and circuit court and overtime issues, these are not things that the respondent appellant brought up. This is not something that they argue as something to be considered. So, you know, based on a manifest way of the evidence, I don't think there's much more to say. And if you have more questions. Did the. Was there an award of overtime in the average weekly wage? The. It was hard to support. Well, the report was conflicted because she said in a written report that she's not going to award it. Then there is a separate finding sheet where she issues that overtime was awarded. Is that in the record? Yes, it's in the actual finding. See if I can. And I said the record, but the appendix of the appellant's brief. The. But the calculations, as Councilman mentioned as well. Where she calculates the average weekly wage to approach. Let's see. Could you show us? Sure. See here. The calculation is. Twenty five weeks. You're in. Again, those calculations. But is there any mention of overtime? It's the calculation that the numbers. OK, what you're saying is it's apparent from the calculation that the arbitrator didn't include overtime, despite the fact that she specifically said she was not going to. So that's what happened. Yeah. There was no argument to that effect. No, she did not. And I think that shows that overtime should be. Yes, there is. Thank you. Counsel may reply. It's just one point on the overtime issue. I think if you go to the appendix of my initial brief, so the arbitrator's findings at page 13 of the appendix. Yes, she does say that overtime shouldn't should not be not be included. And then she goes on to explain how she arrived at her calculations. She acknowledged that there was some discrepancy between what's indicated as Petitioner's Exhibit 0 and Respondent's Exhibit 2, which she felt were the best evidence of the amount of his wages, both regular and overtime. And she used a gross wage of $15,438.25, less overtime earnings of about $1,127, and that's where she got the amount that then she divided by $25 to get to $572. It's our position that this other document, which is the Respondent's Exhibit, shows the lower gross earnings, less overtime. So there is some contradiction there, and she acknowledges that in her findings. Well, what counsel was just pointing to in terms of the calculation under the findings portion of the decision indicating average weekly wage was $572.43, that's consistent with the calculation you just gave us where she excluded overtime earnings of $1,127.23. It is consistent. So where's the inconsistency? I don't know where the inconsistency is. I don't know if there's an inconsistency in her findings. I think there's inconsistency between what one document shows his gross earnings were and what another document shows his gross earnings were. I mean, just based on those two portions of the decision, it looks like she consistently excluded overtime earnings. Thank you. Thank you, counsel, both for your arguments in this matter. We'll be taking it under revision at written disposition.